Kevin F. McCoy
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>         vs.<br><br>BRIAN KEITH BROWN, JR.,<br><br>             Defendant. | NO. 3:05-cr-0005-JWS<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO REDUCE SENTENCE** |

I.    **Introduction.**

Brian K. Brown, an African American man, asks this court for an order reducing his sentence by 15 months pursuant to 18 U.S.C. § 3552(c)(2) and U.S.S.G. § 1B1.10.  His request is grounded in the retroactive amendment to the cocaine base guideline set forth in U.S.S.G. § 2D1.1. Application of this retroactive amendment reduces Mr. Brown's total adjusted offense level from offense level 31 to offense level 29.  Consequently, at criminal history category III, Mr. Brown confronts an advisory guideline range of 108 to 135 months if the amendment is applied to his case. Because the offense of conviction mandates a statutory mandatory minimum sentence of 120

months, Mr. Brown asks the court to reduce his sentence in this matter from 135 months to 120 months.[1]

## II.   Statement of Relevant Facts.

### A.   Background.

The government convicted Mr. Brown in two cases. The first conviction, which is this case, involved one count of distribution of 50 grams or more of crack cocaine to a person Mr. Brown had been romantically involved with, who had distributed controlled substances to in the past, and who worked as a confidential source for the DEA. [PSR ¶¶ 9, 10] The second conviction, which was Case No. 3:06-cr-00005-JWS, involved one count of possessing firearms in furtherance of the drug trafficking crimes.

### B.   The One-Count Indictment, Case No. 3:05-cr-00005-JWS.

On January 18, 2005, the grand jury returned a true bill to an indictment charging Mr. Brown with distributing more than 50 grams of cocaine base. [PSR ¶ 1] The offense occurred on November 20, 2004. The court issued a warrant for Mr. Brown's arrest. Law enforcement officers executed this warrant on March 30, 2005, after the confidential source convinced Mr. Brown to drive to a prearranged arrest location. [PSR ¶ 2]

---

[1] Mr. Brown received a consecutive sentence of 60 months in *United States v. Brian K. Brown, Jr.*, Case No. 3:06-cr-0005-JWS, following his guilty plea to violating 18 U.S.C. § 924(c). Thus, his composite sentence in this case and in Case No. 3:06-cr-0005-JWS was 195 months. If the retroactive crack cocaine guideline amendment is applied in this case to Mr. Brown, his composite sentence becomes 180 months.

Mr. Brown pleaded guilty to this offense without the benefit of a written plea agreement. [PSR ¶ 6]

### C. The Three-Count Indictment in Case No. 3:06-cr-00005-JWS.

Mr. Brown's March 30, 2006, arrest gave rise to a three-count indictment in Case No. 3:06-cr-00005-JWS. At the time of his arrest, Mr. Brown was driving with the same confidential source for the ostensible purpose of selling cocaine base to one of the confidential source's customers. [PSR ¶¶ 31, 32 in Case No. 3:06-00005-JWS] Mr. Brown possessed crack cocaine and was armed with a 40 caliber pistol. [PSR ¶¶ 32, 33, 35 in Case No. 3:06-00005-JWS] Police searched Mr. Brown's residence after his arrest and found marijuana, cocaine, and crack cocaine. Police also found $13,425 in U.S. currency, an Intrateck Tek-9 pistol and a Taurus PT 92 AF 9mm pistol. [PSR ¶¶ 36, 37, 38 in Case No. 3:06-00005-JWS]

The three-count indictment in Case No. 3:06-cr-00005-JWS charged Mr. Brown with possession with intent to distribute 50 grams or more of cocaine base (Count 1), with possession with intent to distribute five grams or more of cocaine base (Count 2), and with possessing firearms in furtherance of the drug trafficking crimes alleged in Counts 1 and 2 (Count 3).

Mr. Brown pleaded guilty to Count 3 of this indictment without the benefit of a written plea agreement. [PSR ¶ 6.b in Case No. 3:06-00005-JWS] However, the notice of intent to change plea at Docket No. 9 reflects a government agreement to dismiss Counts 1 and 2 in Case No. 3:06-cr-00005-JWS in return for Mr. Brown's promise not to contest the relevant conduct described in paragraph 44 of the presentence report prepared in the first case, Case No. 3:05-cr-00005-JWS.

    **D.**    **The Two Cases Consolidated For Sentencing.**

The court consolidated the distribution of 50 or more grams of crack cocaine count (the first case) with the § 924(c) count (the second case). By operation of law, the court imposed a 60-month sentence in the § 924(c) case consecutive to the sentence in the crack cocaine distribution case. 18 U.S.C., § 924(c)(1)(A)(I) and (D)(ii). *See* Docket No. 19 in Case No. 3:06-00005-JWS.

The court found that the quantity of drugs involved in the crack distribution case, combined with the conceded relevant conduct, established a total adjusted offense level of 31. The court determined that Mr. Brown was in criminal history category III. This exposed Mr. Brown to an advisory guideline sentence of 135 months to 168 months.

The court sentenced Mr. Brown to 135 months in this case followed by a consecutive 60-month sentence in Case No. 3:06-0005-JWS. The matter is now before the court on Mr. Brown's 18 U.S.C. § 3582(c)(2) motion to reduce his sentence based on the retroactive crack cocaine guideline amendment.

**III.**    **The Retroactive Cocaine Base Sentencing Guideline Amendment.**

Congress, the courts, and the Sentencing Commission have long been troubled by the apparent racial disparity resulting from the disparate treatment of cocaine powder and cocaine base. The disquiet stems from the fact that there is no chemical difference between cocaine base and cocaine powder. Illustrative of this disquiet were the comments of Circuit Judge (and former Alaska Supreme Court Justice) Robert Boochever in *United States v. Dumas*, 64 F.3d 1427, 1432 (9th Cir. 1995) (Boochever, J. concurring) ("I find the result in this case to be shocking, in that the punishment for the crack cocaine offense is the same as the punishment that would have been

imposed for a comparable offense involving 100 times as much powder cocaine, and the evidence indicates that 92% of federal prosecutions for crack cocaine, which require enormously higher terms of imprisonment, involve African-Americans[.]"), *cert. denied*, 517 U.S. 1114 (1996).

Multiple efforts by the Sentencing Commission to address the racial disparity created by the 100-to-1 ratio met without success until March 8, 2008, when the Commission finally and successfully amended the applicable guideline in a manner that reduces all base offense levels for cocaine base by two levels. The amendment has been expressly made retroactive.

**IV.    Application Of The Retroactive Amendment To Mr. Brown.**

Application of the retroactive amendment to Mr. Brown's case yields a base offense level of 32.

### Original Computation Yielded A Base Offense Level of 34

The parties agreed and the court found that the drug quantities detailed in paragraph 45 of the presentence report were correct. The totals were as follows:

- 262.8 grams of cocaine base
- 379.9 grams of cocaine powder
- 26.1 grams of marijuana.

As correctly demonstrated in paragraph 45, correct application of the then existing marijuana equivalencies guidelines established a base offense level of 34.

**Retroactive Application Of The Amendment Yields A Base Offense Level of 32**

Application of the retroactive amendment to the marijuana equivalency tables to the undisputed drug quantity to the present case yields 1836.75 kilos of Marijuana.[2] This, in turn, yields a base offense level of 32 and, with three levels off for acceptance of responsibility, a total adjusted offense level of 29.

A total adjusted offense level 29 at criminal history category III establishes a recommended sentencing range of 108 to 135 months.

---

[2] The computation breaks down as follows:

**262.8 grams of cocaine base yields 1760.75 kilos of marijuana**

- 262.8 grams of cocaine base yields a base offense level of level 32; *see* Application Note 10(D)(II) to U.S.S.G. § 2D1.1;

- Level 32 establishes the marijuana equivalency of 6.7 kilos of marijuana per gram of cocaine base; *id*;

- 262.8 grams cocaine base x 6.7 kilos of marijuana per gram of cocaine base yields 1760.75 kilos of marijuana.

**379.9 grams cocaine power yields 75.98 kilos of marijuana**

- 379.9 grams of marijuana x 200 grams of marijuana per gram of cocaine powder = 75980 grams of cocaine powder; *see* Application note 10(E) to U.S.S.G. § 2D1.1.

- The kilogram conversion yields 75.98 kilograms of marijuana.

**The Sum of the marijuana quantities yields 1836.75 kilos of marijuana**

- 1760.75 + 75.98 + .0261 = 1836.75 kilos of marijuana

**1836.75 kilos of marijuana yields a base offense level of 32**

**V.     It Is Completely Appropriate To Give Mr. Brown The Benefit Of The Retroactive Amendment.**

Mr. Brown was convicted of serious crimes and the record at sentencing demonstrated that he had clearly been embarked on a dangerous course of conduct. As a consequence, the court imposed a composite sentence of 195 months.

### Mr. Brown's Statement On Allocution

Two years later, Mr. Brown is back before the court pursuant to an 18 U.S.C. § 3582(c)(2) application asking for a 15-month reduction in his composite sentence. In evaluating his request, Mr. Brown invites the court to review the statements he made at allocution and compare those statements with his post-sentencing behavior. His allocution runs for nearly four full transcribed pages. Here are the highlights:

> But I think I'm going to take full responsibility from my job – for what I did, for everything I was doing. And like – it seemed like all my life, that's the thing that – all these things I was doing, I was taught these things, I was raised to – you know what I'm saying, to believe that money was the main thing in my life, that's what I wanted to do. Everything was – it was just glamorized, you know what I'm saying. It's all – it's just – all the generations of my life, that's how its been. Just doing this, doing the same thing, doing the same thing. So I was raised to think these things, just to live this way, you know what I mean.

\* \* \* \* \* \*

> But since I've been down, I've been making a lot of – you know, I've been thinking a lot about my kids, how I want to raise my kids. I don't want my kids to go through the same thing I've been going through in my life. I mean, because it's cycles, been doing the same thing over and over for all – all our generations in our family, you know what I'm saying. And I'm looking at it like, man, I'm looking – I want to stop that cycle, you understand what I am saying.

\* \* \* \* \* \*

> So 15 years, I'm going to just – I mean – its looking like – what is it looking like – or 16, or whatever you guys are trying to give me, I'm looking at and I have to take it as it is. But I'm looking at it as a learning experience. I'm going to move on from this. Every – I tell my family all the time, this thing that I'm in here right now for, I'm looking at this like school, you know what I mean, for me so I can learn out there, so I can better myself, so I can go out there and be somebody. Because I don't want to end up coming back in here. Because I mean, its just a – it's a cycle that never ends.
>
> \* \* \* \* \* \* \* \*
>
> So that's where I'm at right now with this whole situation. I'm just trying to stay focused and learn from this experience. I'm not trying to keep coming back and doing the same thing over and over again. That's just it.

*See* Exhibit A (Transcript of Mr. Brown's April 12, 2006, allocution).

### Mr. Brown's Post-Sentencing Conduct

As the court knows, some defendants never follow though on the promises made at allocution. This can be particularly so for a young man with a chaotic and dysfunctional background who is in the very early years of a massively long sentence. However, in this instance, it appears that Mr. Brown meant what he said.

As the attached B.O.P. progress report dated February 22, 2008, demonstrates, Mr. Brown appears to be taking advantage of every opportunity for self-improvement that is available to him at F.C.I. Herlong. *See* Exhibit B (B.O.P. Progress Report). The progress report demonstrates that Mr. Brown arrived at F.C.I. Herlong on June 14, 2006, that he has "adjusted to the institutional environment" and that he is "not considered a management problem." He had not received any incident reports and has received no disciplinary infractions.

The report demonstrates that he has maintained employment at the institution and that he has received "good performance evaluations as a Hospital Orderly." In addition, he has enrolled in a "pilot program within Heath Services that allows him to gain experience as a Dental Assistant."

Finally, the report details 280 hours of college level courses he has completed through the Lassen County Community College. These classes include the following:

- Business Ownership         24 hours
- Vocabulary                 16 hours
- Beginning Chess            10 hours
- Drug Education             30 hours
- Basic Algebra              12 hours
- Anger Management I         10 hours
- Staying Clean              24 hours
- Basic Math 1               10 hours
- Conversational Spanish     20 hours
- Greek Mythology            8 hours
- Restaurant Ownership       12 hours
- Fitness/Body Conditioning  48 hours
- Communication Class        6 hours
- Healthy Lifestyles I       30 hours

The progress report indicates that "Inmate Brown has completed his financial obligations and is considered FRP complete" and that he should "be considered employable within the institution setting and upon release." *See* Exhibit B (B.O.P. Progress Report). His completion

of the various classes listed above, as well as classes completed since the progress report, is further evidenced by Certificates of Completion. *See* Exhibit C (Certificates of Completion).

This record demonstrates that Mr. Brown is entitled to the two-level reduction provided for under the crack cocaine guideline amendment.

## VI.   Conclusion.

A variety of factors contributed to the perception that the different treatment of cocaine base from cocaine powder resulted in racially disparate sentences. This court, as well as the United States Court of Appeals was compelled to reject that argument based on established case law, which held that a sentence outside the guideline range could not be justified based on disagreement with the 100-to-1 ratio.[3] *See* Docket No 17, pp. 3-4; *see also United States v. Brown,* 215 Fed.App. 687, 2006 WL 3798594 (9th Cir. December 27, 2006).

Although that view has now been rejected by *Kimbrough v. United States*, 128 S.Ct. 558 (2007), the perception of racial disparity can remain, at least for individuals like Mr. Brown. Application of the retroactive amendment to this case will contribute to alleviating Mr. Brown's contrary impression and, just as important, will credit his efforts at post-sentencing rehabilitation.

For all these reasons, Mr. Brown asks the court to grant his motion to reduce the sentence in this matter by 15 months.

---

[3] *See e.g. United States v. Eura*, 440 F.3d 625, 633-634 (4th Cir. 2006), and *United States v. Pho*, 433 F.3d 53, 62-63 (1st Cir. 2006)

DATED at Anchorage, Alaska this 18th day of August 2008.

Respectfully submitted,

s/Kevin F. McCoy
Assistant Federal Defender
601 West Fifth Avenue, Suite 800
Anchorage, AK 99501
Phone:    907-646-3400
Fax:    907-646-3480
E-Mail:    kevin_mccoy@fd.org

Certification:
I certify that on August 18, 2008,
a copy of the ***Memorandum in Support of Motion to Reduce Sentence*** was served electronically on:

Frank Russo
Assistant United States Attorney
U.S. Attorney's Office
222 West Seventh Avenue #9, Room 253
Anchorage, AK  99513-7567

s/Kevin F. McCoy